IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

AMANDA C. MORRIS                                                                PLAINTIFF

v.                                     No. 4:12-cv-281-DPM

U.S. BANK NATIONAL ASSOCIATION;
MICHAEL SHELLEY; and MIKE
RICHARDSON                                                                      DEFENDANTS

ORDER

**1. Summary.** Was Morris, who is white, fired by U.S. Bank because she dated and then married a black man, or because she underperformed? She says her interracial relationship was the reason, and has sued U.S. Bank and two former supervisors, Shelley and Richardson, for discrimination. The Bank says it fired Morris for low customer-loyalty scores, customer complaints, and poor retail loan production. The Court has already dismissed some of Morris's claims. № 20. Claims remain against the Bank under Title VII and the Arkansas Civil Rights Act, and under 28 U.S.C. § 1981 against the Bank, Shelley, and Richardson. № 20 at 7. All defendants seek summary judgment.

There's no direct evidence of discrimination—no racial slurs or overt discriminatory behavior—so the Court considers Morris's claims through the

familiar *McDonnell-Douglas* burden-shifting framework. The analysis for all three claims is the same. *Lake v. Yellow Transportation, Inc.*, 596 F.3d 871, 873 n.2 (8th Cir. 2010). The Court views the evidence in the light more favorable to Morris and draws all reasonable inferences in her favor. *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 860 (8th Cir. 2009).

2. **Background.** Morris was a branch manager at U.S. Bank. She was charged with overseeing her branch's team, attracting new business, and keeping customers happy. The record provides a mixed review of her performance. She received many quarterly and annual awards, like the Pinnacle award, which recognized her branch as one of the best nationwide. She was on pace to get the Pinnacle award again in 2010, the year she was fired. Her yearly performance reports, written by three different district managers—Esther Jackson, Bill Fowler, and Mike Richardson—give a different picture.

The reports are long; here are some excerpts. The 2007 report, done by Jackson, said Morris needed to focus on customer loyalty because she met the Bank's expectations in only one quarter, and she hadn't reached minimum loan production numbers. № 25-18. The 2008 report, done by Fowler,

showed that loan growth needed improvement. № 25-4. The 2009 report, done by Richardson, said revenue was down and customer loyalty was low. № 25-5. Morris objected to the 2009 report. № 25-6 at 1. She also says Shelley, the Bank president in Arkansas, influenced the reports. № 40-1 at 25.

Based on the 2009 report, Richardson put Morris on an action plan—notice that she needed to improve in certain areas. Failure to improve, Morris knew, could get her fired. Among the things needing improvement were customer loyalty and retail lending. № 25-7 at 1. Morris disagreed with being put on the action plan; she complained to the Bank's ethics line that she had an unspecified personal problem with Shelley, but gave no details.

Morris completed the action plan in June 2010. But she continued to fall short of some benchmarks. She missed monthly loan goals, had low customer-loyalty scores, and had low business banking production in April, May, June, July, and August of 2010. № 40-1 at 34. Richardson asked Morris to address her poor performance in writing by 13 August 2010. She responded eleven days after this deadline. In late September, Richardson met with Morris. He gave her a day to formulate a plan to get back on track. At the same time, he asked U.S. Bank's HR department to approve her

termination. The next day, Richardson, with an HR representative present by phone, told Morris she was losing her job. She asked to step down to another position—a voluntary demotion. Richardson rejected the request and fired Morris.

**3. *Prima Facie* Case**. Morris's burden is not heavy, and she's carried it. *Putman v. Unity Health System*, 348 F.3d 732, 735 (8th Cir. 2003). U.S. Bank agrees that the law prohibits workplace discrimination because of interracial relationships, including marriage. Morris was fired. She was qualified to be a branch manager. This requires only a nominal showing, not proof, as the Bank argues, of meeting expectations. *Haigh v. Gelita USA Inc.*, 632 F.3d 464, 469 (8th Cir. 2011). Morris managed the branch for five years. She was highly decorated. At one point she led the State in mortgage referrals. And according to Jackson, a former manager, Morris turned a struggling branch around. Morris was, without question, qualified.

The causation question is close, but Morris's proof suffices. Jackson testified on deposition that Shelley's general attitude toward Morris and her branch essentially turned cold after he met Morris's then fiancé—Chris. Shelley visited less often and became more critical. Shelley also mentioned

Chris to Jackson, saying that he was a good guy or an okay guy. Race was never mentioned. Jackson noted the comment, though, because she could not recall Shelley ever making any remark about another manager's spouse. Morris has offered some reports about other managers' performance in 2010. Some were more underperforming than Morris. They were not fired. None of these other managers were in interracial relationships. Finally, some other managers had been allowed to take a demotion instead of being fired. Morris wasn't. The standard for comparators is not strict at the *prima facie stage*. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851-52 (8th Cir. 2005), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). Though Morris's evidence is not overwhelming, it carries her case forward.

    **4. Legitimate Reasons**. U.S. Bank had good reasons for firing Morris. Her performance issues are well documented. Mock audits done in 2010, for example, returned low scores of 48% and 65%. № *25-12 & 25-13*. In a 2010 checkup, the branch got a rating of "Watch," which is below an "Acceptable." № *25-14 at 1*. After completing her action plan, Morris kept missing loan and loyalty-score marks. When faced with another round of concerns in August 2010, Morris missed her deadline for a responding plan by eleven days. All this adds up to legitimate reasons for firing.

**5. Pretext.** Facing these reasons, Morris hasn't shown that they were a cover for discrimination. She could do this by undermining the Bank's reasons, by showing that other, non-legitimate reasons motivated Shelley and Richardson, or by showing that other employees who performed the same way were treated differently. *Anderson v. Durham D & M LLC*, 606 F.3d 513, 521 (8th Cir. 2010); *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013).

Morris first challenges the Bank's reasons. She points to Jackson's testimony that customer-loyalty scores weren't a good basis to fire someone because these scores were too variable. *№ 40-3 at 7*. Jackson left the company in 2008; her testimony doesn't speak to the Bank's expectations in 2010. Jackson herself emphasized in Morris's annual report that Morris's customer-loyalty scores needed improvement. *№ 25-18*. Keeping customers happy was a big part of Morris's job, and her scores were often under the Bank's targets. The customer-loyalty reason wasn't a pretext for discrimination.

A significant event form was filed against Morris because a large commercial customer complained. Shelley's wife, the CFO of one of the Bank's big customers, lodged the complaint. *№ 25-21 at 2-3*. Morris says the complaint stemmed from a misunderstanding and her branch wasn't to

blame. That the complaint came from Shelley's wife gives the Court pause. But even viewing the customer complaint as a staged reason to fire Morris, she hasn't shown, as she must, that the complaint was a pretext for race-based discrimination. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 794 (8th Cir. 2011). A reasonable fact-finder could conclude that Shelley fired Morris in part because the upset customer's representative was his wife. If true, that may be a questionable management decision, but it's not a Title VII violation.

Morris next says that race, and not performance, was the true reason she was fired. Her proof on this point is thin. There's Shelley's cold treatment of Morris and him asking about Morris's fiancé. Morris says Shelley made another racist remark to district manager Jackson during a party. Jackson, who is black, complimented Shelley on a wall at his house. When she touched the wall, Shelley said "if I find dirt on my wall tomorrow, I'm coming to you." № 40-3 at 17. Jackson also says Shelley treated black tellers differently, but there are no specifics about when this happened or who was involved. Jackson never heard Shelley make racist or discriminatory remarks to Morris—she never saw them together. № 40-3 at 14. As to Richardson, Morris says only that he acted on Shelley's instructions; she doesn't allege that Richardson himself had any racial motive.

The examples of Shelley's mistreatment are too vague and too stale to support a verdict. Morris leans heavily on Jackson's testimony. Jackson left the Bank, however, two years before Morris was fired. Missing from the record is any sufficient indication that Shelley, if he treated Morris differently, did so on account of Morris's interracial relationship. Shelley never mentioned anyone's race. Nothing he said was disparaging to Chris Morris, to black people, or to those in interracial relationships. No reasonable juror could infer from all the circumstances that racial animus motivated Shelley's and Richardson's decision.

**6. Comparators.** Morris says that other employees "similarly situated in all relevant respects[]" were treated differently. *Ridout*, 716 F.3d at 1085. She doesn't need to find someone who is her clone. The employee she points to, however, must have been a branch manager, worked under Richardson, been subject to the same standards, and performed the same way Morris did. *Wierman v. Casey's General Stores*, 638 F.3d 984, 994 (8th Cir. 2011).

This is hard given the lack of information about her coworkers. Morris's chart, for example, *№ 35 at 13-14,* lacks context. It compares Morris with other branch managers on some relevant factors like customer-loyalty scores

and incentive pay. But the chart is silent about other reasons cited for Morris's termination. It's unclear whether the other employees lagged in loan production, as Morris did, where they worked, and for whom they worked. The information about K. K., D. M., and K. D. is likewise incomplete. *№ 35 at 17.* Giving the offered loyalty scores all the evidentiary weight they can bear, the comparisons are too inexact. Without more details, a fact-finder cannot reasonably infer anything meaningful about Morris's treatment from how these other folks were treated.

Morris's examples on the voluntary-demotion point suffer from the same flaw. Some of those employees worked for other managers. *№ 40-3 at 8.* Morris doesn't know how their performance compared to hers. And she doesn't know the circumstances around their requests to step down. For example, Morris is unsure whether their demotion requests came, like hers, in the face of a planned termination.

Despite Morris's many awards, the record shows years of consistent and documented problems in customer loyalty and loan production. A reasonable fact-finder couldn't conclude that the reasons for firing Morris were pretexts for discriminating against Morris because she dated and married a man of another race.

**7. Discovery.** Morris alludes to some problems getting discovery on the comparator issue. *№ 35 at 12–13*. The discovery deadline, as inadvertently extended, has expired, though. *Compare № 22 with № 30*. Any snags should have been brought to the Court's attention by way of joint report, *№ 30 at 3*, or motion under FED. R. CIV. P. 56(d) or (e).

\* \* \*

Motion for summary judgment, *№ 25*, granted.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

21 February 2014